**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEVEENA AVERY BELLINGER, et al., <br><br> *Plaintiff,* <br><br> v. <br><br> PHILADELPHIA KROC CENTER, et al., <br><br> *Defendants.* | Case No. 2:25-cv-02447-JDW |

**MEMORANDUM**

Accidents happen. And when they do, lawsuits often follow. But sometimes the parties addressed the risk before the accident ever occurred. When that happens, a court's job is not to reweigh the wisdom of the agreement but to determine whether it is valid and enforceable and, if so, to give it effect. Javanna Avery-Bellinger slipped on snow and ice while using the outdoor track at the Kroc Center. She claims the Salvation Army failed to maintain the premises during winter conditions and seeks to hold it liable for negligence. The Salvation Army points to a Release and Waiver of Liability Agreement dated March 3, 2022, that bears a signature in Ms. Avery-Bellinger's name. Ms. Avery-Bellinger says she never signed it. But the record shows that she did. And the waiver she signed releases the negligence claim she now asserts. The law requires me to give effect to that agreement, so I will grant summary judgment.

## I.    BACKGROUND

### A.    Factual Background[1]

The Salvation Army owns and operates the Ray and Joan Kroc Center of Philadelphia as a membership-based recreational facility. Individuals seeking access to the facility must complete enrollment paperwork and agree to certain terms and conditions of membership. That paperwork includes a Release and Waiver of Liability Agreement addressing risks associated with use of the facility and releasing the Salvation Army from certain claims arising from that use. Membership does not become active until a potential new member completes the required documentation and the Salvation Army processes it.

Ms. Avery-Bellinger has been affiliated with the Kroc Center for several years. In June 2021, she completed a membership application and signed a Release and Waiver of Liability Agreement in connection with her enrollment at that time. That membership lapsed. In February 2022, she applied for membership scholarship assistance. The Scholarship Application sought a reduced membership rate based on financial eligibility. According to the Salvation Army, applicants for scholarship assistance must submit supporting documentation, including tax forms such as a W-2. On February 17, 2022, the

---

[1] The Salvation Army filed a Statement of Facts in support of its Motion. Ms. Avery-Bellinger did not respond to each asserted fact as required by Federal Rule of Civil Procedure 56(c) and my Policies and Procedures. To the extent a fact was not properly controverted with citation to the record, I treat it as undisputed for purposes of this Motion. *See* Fed. R. Civ. P. 56(e)(2).

Salvation Army sent Ms. Avery-Bellinger a scholarship approval letter. The letter informed her that the Salvation Army had approved her scholarship application and instructed her to complete her membership registration in person at the Kroc Center within fourteen days. The letter also advised her that the scholarship approval would expire on March 4, 2022, if she did not complete the registration process by then.

On March 3, 2022, one day before the stated expiration date, Ms. Avery-Bellinger went to the Kroc Center to complete her membership enrollment. The Kroc Center's New Member Enrollment Policy required new members to complete a membership application form and sign a liability waiver. The Waiver provides that the member assumes all risks associated with use of the Kroc Center and its facilities and expressly releases the Salvation Army and its employees from any and all claims for personal injury arising from participation in activities or from presence on the premises, including claims based on the negligence of the Salvation Army. The agreement states that it applies to the entire premises, including interior and exterior areas, athletic facilities, and common areas.

At the Kroc Center on March 3, 2022, Ms. Avery-Bellinger presented her driver's license to verify her identity and provided debit card information to set up recurring monthly membership payments. The waiver dated March 3, 2022, bears the printed name "Javanna Avery" and a signature above that printed name. The Salvation Army maintains that Ms. Avery-Bellinger signed the waiver during the March 3 enrollment process, along with the related membership and scholarship paperwork. Ms. Avery-Bellinger denies signing the waiver. She contends that because she had been a member of the Kroc Center

since 2016, she did not complete a new liability waiver or membership application in 2022 and does not recall filling out any forms when she returned.

The Salvation Army's records show that it applied the scholarship to Ms. Avery-Bellinger's membership at the time of her enrollment (March 3, 2022) and that it activated her membership at a reduced rate. It then applied recurring charges consistent with that adjusted rate to the debit card she provided.[2]

On January 18, 2024, Ms. Avery-Bellinger returned to the Kroc Center to use the facility. According to her allegations, she was walking or running on an outdoor track located on the premises when she slipped on accumulated snow and ice and fell. She contends that the Salvation Army failed to inspect, treat, or remove the hazard during winter conditions. She alleges that she sustained physical injuries as a result of the fall.

### B.    Procedural Background

Ms. Avery-Bellinger filed this action, asserting a negligence claim against the Salvation Army based on alleged failures in inspection and winter maintenance of the premises. Mr. Naeem Bellinger, Ms. Avery-Bellinger's husband, asserts a derivative claim for loss of consortium arising from the same incident.

---

[2] Ms. Avery-Bellinger disputes that she submitted supporting financial documentation in connection with the scholarship application. However, she does not dispute that she appeared in person on March 3, 2022, that she provided identification and payment information that day, or that her membership became active at a reduced rate immediately thereafter. Whether she submitted supporting financial documentation is not material to this dispute.

The Salvation Army moved for summary judgment, arguing that the waiver bars Ms. Avery-Bellinger's negligence claim because she signed the waiver and because the waiver releases negligence claims arising from use of the Kroc Center premises. In support of its Motion for summary judgment, the Salvation Army submitted the waiver, the related membership and scholarship documentation, payment records reflecting recurring membership charges, and a report from a forensic document examiner, John Paul Osborn, who concluded that Ms. Avery-Bellinger's signature on the liability waiver is genuine. In addition to moving for summary judgment, the Salvation Army filed a motion to strike or exclude the opinions of J. Wright Leonard, Ms. Avery-Bellinger's forensic document examiner.

Ms. Avery-Bellinger opposes both Motions. With respect to summary judgment, she argues that a genuine dispute of material fact exists as to whether she signed the waiver and that, even if she did, the waiver does not apply to injuries allegedly caused by negligent winter maintenance of the outdoor track. To support her position on authenticity, she submitted the report of Ms. Wright Leonard, who states that she could not determine whether the signature is authentic due to the simplicity of the signature and the absence of the original document for microscopic examination. (ECF No. 25-4.) As to the Motion to strike, Ms. Avery-Bellinger contends that Ms. Wright Leonard's methodology is consistent with accepted standards in the field of forensic document examination and that any limitations in her conclusions go to the weight of the opinion, not its admissibility. Both Motions are ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "A plaintiff's bald allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to withstand summary judgment." *Jackson v. Allstate Ins. Co.,* 441 F.Supp.2d 728, 729 (E.D. Pa. 2006).

In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris,* 550 U.S. 372, 378 (2007) (quotation omitted). In opposing summary judgment, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings" and "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Id.* (quotation omitted). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005) (quoting *Celotex Corp.,* 477 U.S. at 325). Further, "[s]he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B). If she "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which ... [she has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 322-23.

## III.    ANALYSIS

### A.    Ms. Avery-Bellinger Signed The Waiver Form

The Salvation Army has satisfied its burden under Rule 56 to show that Ms. Avery-Bellinger signed the waiver. It produced the waiver bearing Ms. Avery-Bellinger's printed name and signature. It produced contemporaneous records showing that she appeared in person at the Kroc Center on March 3, 2022, presented her driver's license to verify her identity, and provided her debit card to establish recurring membership payments. The enrollment paperwork that she completed that day, including the waiver, corresponds to that transaction, and there is no dispute that she began receiving the benefits of membership immediately thereafter. In addition, the Salvation Army retained a forensic document examiner who compared the questioned signature to numerous known

exemplars and concluded that the signature is genuine and belongs to Ms. Avery-Bellinger. Taken together, that documentary evidence, transactional history, and expert opinion establish that Ms. Avery-Bellinger executed the waiver.

The burden therefore shifts to Ms. Avery-Bellinger to identify evidence from which a reasonable jury could conclude that the signature is not hers. *See Anderson*, 477 U.S. at 248. She must do more than disagree with the record or have an expert who expresses uncertainty as to whether the signature is genuine. Rule 56 requires evidence sufficient to permit a reasonable factfinder to return a verdict in her favor. Fed. R. Civ. P. 56. A nonmoving party may not rely on metaphysical doubt or speculation; she must point to concrete facts in the record that create a genuine dispute. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 586.

Ms. Avery-Bellinger does not meet this burden. She relies first on her own sworn testimony, denying that she signed the waiver. But courts in this Circuit have repeatedly held that a party's failure to recall signing a document, or a bare denial of execution, is insufficient to create a genuine dispute of material fact when documentary evidence supports the authenticity of a disputed signature. *See Gomez v. Rent-A-Center, Inc.*, No. 18-cv-1528, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018); *44A Trump Int'l, Inc. v. IncNetworks Inc.*, No. 12-2292, 2014 WL 495145, at *3 (D.N.J. Feb. 6, 2014). I agree with those decisions. Obviously, a party denying a signature can't prove a negative. But she must offer more than a bald denial. She must offer something circumstantial, at a minimum, to call into question the veracity of the signature.

Ms. Avery-Bellinger does not identify inconsistencies in the document, irregularities in the enrollment process, or any evidence suggesting fabrication. She offers only self-serving testimony that she did not sign it. But her bare denial, without corroborating evidence and considering the Salvation Army's documentary and expert evidence, is insufficient to create a genuine dispute. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Nor does Ms. Avery-Bellinger's expert report create a genuine dispute of material fact, even if I consider it.[3] Ms. Wright Leonard does not opine that the signature was forged or written by a different individual. Instead, she explains that because the signature is relatively simple in form and because she did not have access to the original document for examination, she cannot reach a definitive conclusion regarding authenticity. That inconclusive opinion does not contradict the Salvation Army's expert, and it does not supply affirmative evidence that the signature is not Ms. Avery-Bellinger's. At most, it raises metaphysical doubt about Ms. Avery-Bellinger's evidence, and that metaphysical doubt doesn't create a need for a trial. Considering the record as a whole and drawing all reasonable inferences in Ms. Avery-Bellinger's favor, there is no evidentiary basis from which a reasonable jury could conclude that she did not sign the waiver.

---

[3] Because Ms. Wright Leonard's opinion doesn't create a material factual dispute, I do not need to resolve the Motion to strike it.

**B.      The Waiver Is Enforceable**

Because Ms. Avery-Bellinger executed the waiver, the remaining question is whether that agreement is enforceable and whether it bars the negligence claim she asserts here. "[A] federal court must apply the substantive laws of its forum state in diversity actions," such as this one. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). Pennsylvania law governs the validity of the release. "In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language" and that courts interpret releases in accordance with general contractual principles, such that the parties' intent is to be determined from the four corners of the agreement. *Taylor v. Solberg*, 778 A.2d 664, 667-68 (Pa. 2001) (citations).

The waiver at issue is a stand-alone document labeled as a "Release & Waiver of Liability Agreement." It states that the member assumes all risks associated with use of the Kroc Center, including risks that the negligence of The Salvation Army and its employees cause. It further provides that the member releases and discharges The Salvation Army from any and all claims arising from the member's presence at the Kroc Center. The agreement states that it covers the entire premises of the Kroc Center, including interior and exterior athletic areas and common areas. That language is broad, direct, and unequivocal, and it reflects the Parties' intent to release ordinary negligence claims arising from use of the facility. Pennsylvania courts routinely enforce such provisions in athletic and recreational settings when the agreement encompasses

negligence. *See Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189-91 (Pa. 2010); *Feleccia v. Lackawanna College*, 215 A.3d 3, 17-18 (Pa. 2019).

Ms. Avery-Bellinger argues that slipping on ice on an outdoor track falls outside the scope of the waiver because such a hazard is not an inherent athletic risk. But the waiver is not limited to inherent risks of exercise. It covers the entire premises and includes claims of negligence like the Salvation Army's alleged failure to inspect or remove ice from an outdoor athletic area falls within that language. I will not narrow terms that the Parties drafted broadly and accepted. Because the waiver is valid and enforceable, Ms. Avery-Bellinger's negligence claim cannot proceed.

## IV.    CONCLUSION

Ms. Avery-Bellinger has not produced evidence to create a genuine dispute that she signed the waiver, and its plain language releases the negligence claim she asserts. Mr. Bellinger's loss of consortium claim is derivative of that claim and cannot survive its dismissal. *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404 (E.D. Pa. 2019). I will therefore grant the Salvation Army's motion for summary judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 5, 2026

11